CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

MAR 12 2019

JULIA C. DUDLEY, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MULUKEN WUBNEH, ) | |
|     Plaintiff, ) | Civil Action No. 7:17cv00510 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| J. HUTCHINSON, ) | By: Hon. Jackson L. Kiser |
|     Defendant. ) |     Senior United States District Judge |

Plaintiff Muluken Wubneh is an inmate who was incarcerated at Keen Mountain Correctional Center ("KMCC") within the Virginia Department of Corrections ("VDOC"). On November 9, 2017, he filed a pro se Complaint pursuant to 42 U.S.C. § 1983, alleging that Defendant J. Hutchinson, a former correctional officer at KMCC, violated his Eighth Amendment right against cruel and unusual punishment by verbally and physically assaulting Plaintiff in his cell. This matter is before the Court on the parties' cross-motions for summary judgment. [ECF Nos. 15, 20.] For the reasons that follow, I find that that both parties have presented genuine issues of material fact before the Court, and their motions for summary judgment motion are therefore denied.

I.

A.

Plaintiff alleges that on April 16, 2016, he was using a telephone in a segregation unit when an unidentified correctional officer unplugged the phone cord. (Pl.'s Compl. at 3 [ECF No. 1].) He then contacted Correctional Officer J. Harrison, who reconnected the plug. Id. Subsequently, Defendant Hutchinson approached Plaintiff's cell "in an aggressive, threatening manner" and loudly yelled, "You're a snitch! Snitches don't use the phone in segregation while I'm working!" This, according to Plaintiff, put his safety at risk. As Plaintiff was then attempting to dial the phone,

Defendant yanked the phone out of Plaintiff's hand and "slammed the tray slot on [his] right hand . . . causing [him] painful injury." (See id.; see also Pl.'s Mot. for Summary Judgment, Attach. A, (hereinafter "Pl.'s First Aff.") [ECF No. 15-1].) Plaintiff alleges that, during this encounter, he was "not violating any prison rules, nor was [he] acting in a disruptive manner." (Pl.'s Compl. at 4.) Following the incident, Plaintiff requested a nurse, who gave Plaintiff an ice pack and scheduled him to see a doctor. (Pl.'s First Aff.)

Plaintiff appended to his Complaint a VDOC "Complaint and Treatment Form." (Pl.'s Compl. Ex. A.) Though portions of this handwritten record are not legible, it generally shows that Plaintiff visited a prison medical clinic on April 21, 2016, complaining of right arm and hand pain. Id. He had an "interaction [with an] officer when [the] phone was removed from [his] hand due to failure to comply [with] instructions." This, Plaintiff reported, caused pain in his right hand. Id. He also noted a history of chronic right shoulder pain. During a physical examination, he was found to have full range of motion and full strength. He was prescribed some Tylenol that he was advised to take for one week. Id. On April 25 he sought an appointment with a doctor because he wanted an arm sling for his right arm. Id. Staff recorded that he was not in acute distress and he was able to raise his arm without difficulty. He was placed on a doctor's list "for further evaluation." Id.

Plaintiff also appended to his Complaint sworn affidavits by L. Thompson and B. Floyd. (Pl.'s Compl., Exs. B, C [ECF No. 1-1].) It appears these individuals were fellow inmates who were witnesses to the events on April 16. Id. Thompson states that he was standing at his cell door on the date of the incident when he observed officers yelling and slamming a cell tray slot. (Id., Ex. B.) Plaintiff then "screamed in pain and requested immediate medical attention, which was denied." (Id.) Similarly, Floyd alleges that he saw correctional officers at cell 243 arguing, and

while he could not hear what was said, he saw Hutchinson "yelling something then Bam!!! real loud and my next door tray slot shuts." (Pl.'s Compl. Ex. C.)

### B.

Defendant appended affidavits from himself and Institutional Investigator Brian Mitchell to his brief in support of his Motion for Summary Judgment. Defendant alleges that on the day in question, Plaintiff called him over to his cell door complaining that his phone call had been disconnected. (Def.'s Br. in Supp. Mot. for Summary Judgment, Enclosure A, Hutchinson Aff. ¶ 4 [ECF No. 21-2].) Officer J. Harrison was also present at that time. Id. Defendant instructed Plaintiff to hand over the phone so he could verify the status of the disconnected call. Id. Plaintiff responded, "if you touch the fucking phone, I am going to break your fucking arm!" Id. He then attempted to pull the phone receiver back into his cell, but lost his grip, providing Defendant with an opportunity to lift the phone out of the cell. Id. After Plaintiff had pulled his arm back into the cell, Defendant secured the tray slot. Id. He alleges that he did "not assault [Plaintiff], nor use excessive force against him." Id. ¶ 5. Following the incident, Defendant placed an institutional disciplinary charge against Plaintiff for "Threatening Bodily Harm to any Person" and Officer Harrison placed a charge against Plaintiff for "Tampering with Security Materials, Devices or Equipment." Id.

Investigator Mitchell had been responsible for investigating the incident after he received a written complaint from Plaintiff in late April 2016. (See Def.'s Br. in Supp. Mot. for Summary Judgment, Enclosure A, Mitchell Aff., Enclosure to Aff.. ("Investigation Report") at 1 [ECF No. 21-1].) Mitchell noted that when Plaintiff was removed from his cell for an interview, he had his arm wrapped in a sling. Id. He did not wince or complain, however, when he was cuffed from behind. During the interview, Mitchell inquired about the tray slot, but Plaintiff "became agitated"

and told Mitchell to "look at the camera." Plaintiff also became agitated when pressed for details about his subsequent visit with a nurse, and he terminated the interview and requested to be returned to his cell. Id. Mitchell later interviewed Officer Harrison, who was with Defendant during the incident and told a substantially similar story to Plaintiff. Id. at 2.

Finally, Mitchell interviewed Lieutenant C. Shelton, who had performed a security check on April 16 sometime after the incident had occurred. Id. Shelton stated that Plaintiff did not report to her any allegations of assault, but he did state that his arm had been hurt while using his telephone. Plaintiff declined to elaborate, and Shelton did not see any injuries to Plaintiff. Id. Based on the accounts of Harrison, Shelton, and the parties, as well as his review of the medical evidence and video recordings of the incident, Mitchell concluded that there was "no evidence to support [Plaintiff's] claim that he was assaulted by staff." Id. at 2–3.

Finally, Defendant appended to his motion a "Rapid Eye Video" of Plaintiff's cell block on April 16, 2016. Unfortunately, neither the video evidence nor any other information contained in the record are sufficient to confirm the exact location of Plaintiff's cell in the video or the identities of the individuals in the video at any given moment.[1] Moreover, even if this information were available, the poor quality of the video inhibits any reliable determination, as a matter of law, as to whether Defendant closed Plaintiff's hand in a tray slot on his cell door. Indeed, Mitchell's investigative report also notes that "[d]ue to the location of the cell and distance from the cell to the camera, the footage at the cell by itself cannot be used to support or contradict the allegation of assault." (Investigative Report at 2–3.)

---

[1] Mitchell's investigative report does cite to some portions of the video and refers to moments where Defendant and Harrison are at Plaintiff's cell and walking across the frame. Unfortunately, these general references, in light of the relatively poor video quality, are not sufficient to clarify where Plaintiff's cell is located among the numerous cells and video angles depicted in the evidence.

## II.

Federal Rule of Civil Procedure 56 provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." Id. at 250. In considering a motion for summary judgment, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994).

A court must grant a motion for summary judgment if, after adequate time for discovery, the nonmoving party fails to make a showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. The nonmoving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation. Glover v. Oppleman, 178 F. Supp. 2d 622, 631 (W.D. Va. 2001). The trial judge has an "affirmative obligation" to "prevent 'factually unsupported claims and defenses' from proceeding to trial." Id. (quoting Celotex, 477 U.S. at 317).

The court applies the same standards when considering cross-motions for summary judgment. Monumental Paving & Excavating, Inc. v. Pennsylvania Manufacturers' Ass'n Ins. Co., 176 F.3d 794, 797 (4th Cir. 1999). See also Rossignol v. Voorhaar, 321 F. Supp. 2d 642, 646 (D.

Md. 2004). The court must "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." Towne Mgmt. Corp. v. Hartford Accident & Indem. Co., 627 F. Supp. 170, 172 (D. Md. 1985); see also ITCO Corp. v. Michelin Tire Corp., Commercial Div., 722 F.2d 42, 45 n.3 (4th Cir. 1983) ("The court is not permitted to resolve genuine issues of material fact on a motion for summary judgment – even where . . . both parties have filed cross motions for summary judgment.") (emphasis omitted).

### III.

Defendant raises two arguments in his motion. He first argues that Plaintiff's claim should be dismissed because Plaintiff fails to specify the form of relief sought in his Complaint. As an initial matter, it is not clear that Defendant seeks to challenge this deficiency in Plaintiff's Complaint by way of a Rule 56 Summary Judgment Motion because he relies on the argument that Plaintiff "fails to state a claim on which relief may be granted," the standard for a Motion to Dismiss under Rule 12(b)(6). It is well-settled in this district that Rule 12(b)(6) "is a vehicle to dismiss a 'claim' in its entirety" and that a court should not dismiss a complaint for failing to request relief "so long as it sets out facts sufficient to support a reasonable inference that the plaintiff is entitled to any relief the court can grant." Meeks v. Emibata, 7:14cv00534, 2015 U.S. Dist. LEXIS 48112, at *6–7 (W.D. Va. April 13, 2015) (quoting Charles v. Front Royal Volunteer Fire & Rescue Dep't, Inc., 21 F. Supp. 3d 620, 629 (W.D. Va. 2014)). Here, Plaintiff would, at worst, be entitled to nominal damages if he were to prevail on his underlying claim under § 1983. See Lewin v. Cooke, 28 F. App'x. 186, 194 (4th Cir. 2002); see also Sutherlin v. Smith, No. 4:15cv37, U.S. Dist. LEXIS 18973, at *18–19 n.10 (Feb. 17, 2016). Accordingly, Defendant's argument that the Complaint "fails to state a claim" is without merit.

Defendant's argument is equally unpersuasive under Rule 56. Plaintiff's failure to specify a form of relief in his Complaint does not mean that Defendant is entitled to judgment as a matter of law. Indeed, the Federal Rules do not require a Plaintiff to specifically allege damages in his Complaint. See Sutherlin, 2016 U.S. Dist. LEXIS 18937, at *18. To the contrary, Rule 54(c) specifically states that a court may grant a party relief to which he is entitled "even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c); see also Vance v. Ball State Univ., No. 1:06cv1452, 2008 U.S. Dist. LEXIS 12366, at *10–11 (finding that Rule 54(c) would permit the Court to award injunctive relief under the plaintiff's § 1983 claim even where Plaintiff failed to request such relief in the complaint).[2]

Defendant argues that any relief granted in this case would be advisory because the Plaintiff did not specifically ask for relief in his Complaint. The courts have found advisory opinions to be prohibited under Article III of U.S. Constitution, which imbues the judiciary with the power to hear only "cases" or "controversies." See United States v. McClure, 241 F. App'x. 105, 107 (4th Cir. 2007).[3] Opinions are not advisory, however, where the case "pit[s] against each other 'adverse parties whose contentions are submitted to the court for adjudication,'" McClure, 241 F. App'x. at 108 (quoting Muskrat v. United States, 219 U.S. 346, 357 (1911)), and "a decision in the case [is] likely to have some effect on the dispute," id. (citing Chi. & S. Air Lines v. Waterman S.S. Corp,

---

[2] Rule 54 does not excuse a failure to plead damages where proof of damages is an essential element of the cause of action alleged. See, e.g., Rey v. Countrywide Home Loans, Inc., No. 11-00142, 2012 U.S. Dist. LEXIS 9111, at *13 (D. Haw. Jan. 26, 2012) ("Because damages are a necessary element of a RESPA claim, failure to plead damages is fatal to a RESPA claim."). Proof of damages, however, is not necessary to establish a prima facie claim under 42 U.S.C. § 1983. See 42 U.S.C. § 1983 (Section 1983 plaintiff is allowed but not required to seek damages; he may also pursue injunctive and declaratory relief.).

[3] Questions as to whether an opinion is advisory generally arise where "federal judicial power is invoked to pass upon the validity of actions by the Legislative and Executive Branches of the Government." Flast v. Cohen, 392 U.S. 83, 96 (1968). For example, in Public Serv. Co. v. EPA, upon which Plaintiff relies, the court found that it would violate Article III by reversing an EPA opinion letter in a case where the plaintiff had not identified any affirmative obligations that the EPA had imposed upon it. 225 F.3d 1144, 1148 n.4 (10th Cir. 2000).

333 U.S. 103 (1948). Here, Plaintiff's Complaint presents to this Court a distinct point of dispute between adverse parties. Moreover, because I may issue appropriate relief under Rule 54, any decision would undoubtedly have an effect on the dispute. Accordingly, I do not read Plaintiff's Complaint to seek an advisory opinion.

### IV.

Next, Defendant argues that the Plaintiff's case should be dismissed because there is no genuine issue of material fact with regard to his excessive force claim. Because Plaintiff's Motion for Summary Judgment effectively raises the same issue, I will address both parties' motions jointly.[4]

The Eighth Amendment's prohibition on cruel and unusual punishment forbids the malicious and sadistic infliction of pain on prisoners. Whitley v. Albers, 475 U.S. 312, 319 (1986); see Wilson v. Seiter, 501 U.S. 294, 298 (1991) (holding that an Eighth Amendment claim for excessive force requires an objective deprivation of a basic human need and that prison officials subjectively acted with a sufficiently culpable state of mind). The core judicial inquiry is whether the force was used "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320–21; see Wilkins v. Gaddy, 559 U.S. 34, 37 (2010). The Supreme Court has identified several non-dispositive factors to be considered in reaching this determination, including: (1) the need for application of force, (2) the relationship between the need and the amount of force used, (3) the extent of any

---

[4] The majority of Plaintiff's "Motion for Summary Judgment" is merely a point-by-point response to the affirmative defenses raised in Defendant's Answer to Plaintiff's Complaint. He does, however, append to his motion an affidavit alleging substantially similar facts to those in his Complaint. For the sake of argument, I will assume that Plaintiff's motion is meant to argue, generally, that Defendant has failed to allege a genuine issue of fact refuting his excessive force claim and that he is entitled to judgment as a matter of law. See Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) ("[C]ourts should construe liberally motion papers and pleadings filed by pro se inmates and should avoid applying summary judgment rules strictly.").

inflicted injury, (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and (5) any efforts made to temper the severity of a forceful response. Id. at 321. Moreover, while the absence of serious injury is relevant to determining "whether the use of force could plausibly have been thought necessary in a particular situation" or to provide evidence as to "the amount of force applied," it is not a threshold requirement for stating an excessive force claim. Wilkins, 559 U.S. at 37 (internal quotation marks and citation omitted). Instead, "contemporary standards of decency are always violated when prison officials maliciously and sadistically use force to cause harm, regardless of whether significant injury is evident." Hudson v. McMillian, 503 U.S. 1, 9 (1992).

The parties have raised material disputes as to all of the Whitley factors. As to factors one, two, four, and five, Defendant alleges in his affidavit that he did not assault or use excessive force against Plaintiff, and he corroborates his version of events with Mitchell's affidavit and investigatory report. Plaintiff alleges in a sworn affidavit, however, that Defendant yelled at him threateningly and then deliberately slammed his hand in a tray slot. Affidavits from L. Thompson and B. Floyd at least partly corroborate Plaintiff's version, with both insisting that they heard one or more correctional officers yelling, followed by the slamming of a tray door. Floyd also alleges that he heard Plaintiff scream in pain and request medical attention, which was denied. Moreover, while Defendant alleges that Plaintiff threatened him with physical violence if he touched the phone, Plaintiff states, unequivocally, that he was "not violating any prison rules" or "acting in a disruptive manner." (Pl.'s Compl. at 2.)

As to the third factor, Defendant points to medical evidence tending to show that Plaintiff suffered little to no injury as a result of the alleged incident. This evidence is expressly contradicted in the record by Plaintiff's statement that his hand was injured because of Defendant's actions.

Plaintiff not only sought out medical attention, but investigator Mitchell's report mentions that he was in a sling at the time he was retrieved from his cell for an interview. Moreover, even to the extent that Plaintiff did not sustain any significant injuries, it is well-settled that significant injury is not required to establish a claim for excessive force. See Wilkins, 559 U.S. at 37; see also Hudson, 503 U.S. at 9. So long as Plaintiff has introduced facts sufficient to raise a question as to whether Defendant used force "maliciously and sadistically for the very purpose of causing harm," the absence of objective injury will not preclude his case from moving forward. Whitley, 475 U.S. at 320–21. I find that both parties have presented material facts that raise a dispute as to this question. Because neither party has satisfied his burden of showing that there are no genuine disputes of material fact, I will deny the parties' motions for summary judgment.

V.

For the foregoing reasons, the parties' motions for summary judgment [ECF Nos. 15, 20] are denied. An appropriate order will be entered this day.

ENTERED this 12th day of March, 2019.

*Jackson L. Kiser*
SENIOR UNITED STATES DISTRICT JUDGE